UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

ANTHONY HERNANDEZ,

               *Petitioner*,

      -*against*-

DALE ARTUS, Superintendent of
Clinton Correctional Facility,

              *Respondent*.

---------------------------------X

**MEMORANDUM & ORDER**

09-CV-05694 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

       Petitioner Anthony Hernandez ("petitioner"),
proceeding *pro se,* filed this petition for a writ of *habeas
corpus* on December 28, 2009, challenging the constitutionality
of his 2006 state court conviction for Murder in the Second
Degree and Criminal Possession of a Weapon in the Second Degree.
(ECF No. 1, Petition for Writ of *Habeas Corpus* ("Pet.") 1.)  The
original petition alleged that petitioner's conviction for
murder was not supported by legally sufficient evidence, and
that his due process rights were violated at sentencing by the
unlawful addition of a period of post-release supervision.  (*See
generally id.*)  On August 18, 2018, following a lengthy stay of
proceedings, petitioner filed an amended petition.  (ECF No. 34,
Amended Petition for Writ of *Habeas Corpus* ("Am. Pet.").)  The
amended petition added two new claims alleging that petitioner
was denied effective assistance of counsel at trial, and on

1

appeal.  (*Id.* 6, 8.)  Dale Artus, the nominal respondent

("respondent"),[1] opposes the petition as procedurally barred and

without merit.  (*See generally* ECF No. 39, Response to Order to

Show Cause.)[2]  For the reasons discussed below, the petition is

denied in its entirety.

**BACKGROUND**

## I.  Factual Background

Petitioner's conviction stems from the July 19, 2004

shooting death of fifteen year-old Larry Hill ("Hill").  (ECF

No. 1-5, Memorandum in Support ("Mem. in Sup.") 2, 3; *see, e.g.*,

ECF No. 39-1, *People v. Hernandez*, Indictment No. 4271/05 (Kings

Cty. Crim. Ct.), Hearing Transcript dated May 22, 2006 ("Pre-

trial Tr. (5/22/06)"), 13:9-13; *see also id.*, Trial Transcript

("Trial Tr."), 3:9-13.)[3] It is undisputed that petitioner was the

gunman.  (Trial Tr. 248:20-23 (Defense Counsel: "I submit to you

based on the evidence [that petitioner] was not trying to shoot

Larry Hill but he hit him.  He wasn't trying to hurt anybody but

he hit Larry Hill.").)  At trial, the State presented witnesses

---

[1]     Mr. Artus was the Warden of Clinton Correctional Facility, petitioner's place of incarceration when this case commenced.  The District Attorney of Kings County is representing respondent in this matter pursuant to an agreement with the Attorney General of the State of New York.

[2]     Respondent's filing includes an Affidavit in Opposition to the petition, available at ECF No. 39, ECF pp. 1-5 ("Aff. in Opp."), and a Memorandum of Law in Opposition to the petition, available at ECF No. 39, ECF pp. 6-24 ("Opp.").

[3]     The transcript for pre-trial proceedings on May 22, 2006, a suppression hearing, is available at ECF No. 39-1, ECF pp. 1-40.  The transcript for petitioner's trial, which began September 12, 2006, and ended September 15, 2016, is available at ECF pp. 212-530.

Amanda Lee Santiago and Jamell Young, both of whom were present at the shooting. (*Id.* 27, 73.) The witnesses provided mutually corroborative testimony that petitioner instigated a confrontation with the victim, fired a warning shot, then fired two shots into Hill's back while Hill was seated on a park bench. (*Id.* 28-31, 81-86.) The defense argued that Hill instigated the confrontation, and that petitioner accidentally shot Hill only after firing multiple warning shots in response to a third individual, J.P., who began chasing petitioner with a knife. (*Id.* 244, 248-49.)

On September 15, 2006, petitioner was convicted by a unanimous jury verdict of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. (*Id.* 315-16.) On October 11, 2006, the late Justice Gustin Reichbach sentenced petitioner to a term of 22.5 years to life imprisonment. (ECF No. 39-1, *People v. Hernandez*, Indictment No. 4271/05 (Kings Cty. Crim. Ct.), Sentencing Transcript dated October 11, 2006 ("Sent. Tr."), 12:15-17.)[4] Though Justice Reichbach did not impose a period of post-release supervision at sentencing, on October 16, 2006, the clerk of court issued a revised sentencing order that incorporated a term of five years post-release supervision. (Aff. in Opp. ¶ 7.)

---

[4]    For the charge of Criminal Possession of a Weapon, Justice Reichbach imposed a prison term of seven years, to run concurrently with petitioner's sentence for the murder charge. (*Id.* 12:17-20.)

## II.   Procedural History

Petitioner appealed his guilty verdict, alleging legally insufficient evidence and due process violations at sentencing.  (Aff. in Opp. ¶ 8.)  On appeal, the Appellate Division affirmed petitioner's conviction but vacated the term of post-release supervision, explaining that the trial court erred by failing to pronounce that aspect of petitioner's sentence.  *People v. Hernandez*, 55 A.D.3d 849, 850 (N.Y. App. Div. 2d Dep't 2008).  On remand, the court re-sentenced petitioner to the same term of custody, and formally imposed five years post-release supervision.  (Aff. in Opp. ¶ 10.)  On January 22, 2009, the New York Court of Appeals denied petitioner leave to appeal.  *People v. Hernandez*, 874 N.Y.S.2d 11 (N.Y. 2009).

On December 17, 2009, petitioner filed the *habeas* petition commencing this case.  (*See* Pet.)  On February 5, 2010, petitioner filed a motion to vacate his conviction under New York Criminal Procedure Law ("CPL") § 440.10 (ECF No. 17-10, 440.10 motion), arguing that his trial counsel was ineffective. (Am. Pet. 2, 3.)  On July 9, 2010, Justice Reichbach denied petitioner's 440.10 motion.  (ECF No. 17-7, Decision and Order Denying 440.10 Motion ("440.10 Decision").)  The 440.10 Decision held that:

> While most of the arguments defendant now raises in
> support of his claim of ineffective assistance of
> counsel appear on the record and therefore could have
> been adequately reviewed upon direct appeal, the
> defendant failed to raise any of these issues in that
> appeal.  The claims are therefore barred by CPL §
> 440.10(2)(c) . . . .

(*Id.* 1.)

Justice Reichbach further held that, "[i]f the Court were to reach the merits," it would find that: (1) defense counsel's decision to have petitioner testify at his trial did not result in petitioner providing testimony that was more incriminatory than his pre-trial statement to the police; (2) it would be impossible, five years after the trial, to recreate the petitioner's demeanor while he testified, in order to gauge whether his testimony negatively impacted the jury's perception of him and his credibility; (3) petitioner's claim that his counsel did not discuss the plea offer with him was belied by petitioner's concession that he understood the plea offer; (4) the claim that defense counsel did not make clear to petitioner that he should accept the offer was too subjective; (5) the remainder of petitioner's arguments were both meritless.  (*Id.* 2-3.)  The court thus dismissed petitioner's 440.10 motion in its entirety.  (*Id.* 3.)

On December 3, 2010, the Appellate Division denied petitioner leave to appeal the 440.10 Decision.  (ECF No. 29, Status Update Letter, dated May 30, 2018 ("Status Ltr.").)  On

February 2, 2011, the court granted petitioner's motion to stay the case, effective *nunc pro tunc* from March 5, 2010, pending exhaustion in state court of petitioner's unexhausted claims. (ECF No. 19.)  Petitioner thereafter filed a petition for writ of error *coram nobis* before the Appellate Division, and asserted that he was denied effective assistance of appellate counsel. (Status Ltr.)  On May 30, 2012, the Appellate Division denied petitioner's motion, *People v. Hernandez*, 95 A.D.2d 1358 (N.Y App. Div. 2d Dep't 2012), and on October 29, 2012, the New York Court of Appeals denied petitioner leave to appeal the Appellate Division's denial.  *People v. Hernandez*, 19 N.Y.3d 1102 (2012).

On June 6, 2018, the court lifted the stay in this case, and administratively re-opened the matter.  (Dkt. Order dated June 6, 2018.)  On August 18, 2018, petitioner filed his amended *habeas* petition, adding claims of ineffective assistance of trial and appellate counsel.  (Am. Pet. 6, 8.)  Respondent filed his opposition on October 29, 2018 (ECF No. 39), and petitioner filed a reply on November 11, 2018.  (ECF No. 40, Reply.)

## LEGAL STANDARD

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of *habeas corpus* by a person in custody pursuant to a state court judgment may only be brought

on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A *habeas* petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289 (2013).

For the purposes of federal *habeas* review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to," or an "unreasonable application of," clearly established federal law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13.  Factual determinations made by the state court are presumed to be correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101-02 (2d Cir. 2011) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)); *see also Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Federal review is barred whenever "a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."  *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

State procedural default or failure to exhaust state court remedies will operate as a bar to *habeas* review unless the petitioner can (1) establish cause for his default and actual prejudice resulting from the alleged violation of federal law, or (2) demonstrate that the failure to consider the petitioner's claims would result in a fundamental miscarriage of justice. *See Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).  A petitioner may fulfill the cause requirement in two related ways.  First, the petitioner can demonstrate that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule."

*Gutierrez*, 702 F.3d at 111 (citing *McClesky v. Zant*, 499 U.S. 467, 493 (1991)). Alternatively, the petitioner can establish cause by demonstrating futility, specifically, that "prior state case law has consistently rejected a particular constitutional claim." *Id.* (citing *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006)). To establish prejudice, the petitioner must demonstrate that the alleged error resulted in "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks and citation omitted).

Even if the petitioner is unable to establish cause and prejudice, the procedural default may be excused if he can show that a fundamental miscarriage of justice would result, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (alteration in original, internal quotation marks omitted).

*Habeas corpus* petitions must also meet "heightened pleading requirements," *McFarland v. Scott*, 512 U.S. 849, 856 (1994), including pleading facts supporting the petition with particularity. *See* 28 U.S.C. § 2254, *Habeas Corpus* Rule

2(c)(2), (3) (requiring that petition must "state the facts supporting each ground" and "state the relief requested"); *see also Mayle v. Felix*, 545 U.S. 644, 655, 656 (2005) (pleading standard for "Habeas Corpus Rule 2(c) is more demanding," and "habeas petitioners [must] plead with particularity"); *Kane v. Bailey*, No. 2:17-CV-157-CR-JMC, 2017 WL 7037684, at *2 (D. Vt. Oct. 10, 2017), *report and recommendation adopted sub nom. Kane v. Comm'r of Dep't of Mental Health*, No. 2:17-CV-157, 2018 WL 527968 (D. Vt. Jan. 22, 2018) (petition was "fatally undermined by the absence of facts supporting [petitioner's] claims").

Furthermore, in reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review *pro se habeas* petitions with a lenient eye). Accordingly, the court must interpret petitioner's pleadings as raising the strongest arguments they suggest. *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *Martin v. United States,* 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011) (citing *Williams,* 722 F.2d at 1050).

**DISCUSSION**

## I.   Insufficient Evidence

Petitioner claims his conviction for Murder in the Second Degree was based on legally insufficient evidence.  (Am. Pet. 4.)  Specifically, petitioner asserts the prosecution did not prove beyond a reasonable doubt that he had the requisite intent to kill Hill, that the testimony of the two alleged eyewitnesses to the shooting—Jamell Young and Amanda Santiago—contradicted one another, and that the medical examiner contradicted the eyewitnesses' testimony.  (*Id.*)

Petitioner's insufficient evidence claim is procedurally barred because it was decided on an independent and adequate state law ground.  It is well-settled that "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."  *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).  The bar applies "even where the state court has also ruled in the alternative on the merits of the federal claim," which is often the case.  *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).  "To bar habeas review . . . the state court's decision must rest not only on an independent procedural bar under state law, but also on one that is adequate to support the judgment."  *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (internal quotation

and citation omitted), *cert. denied*, 552 U.S. 1150 (2008).  A state procedural bar "is 'adequate' if it 'is firmly established and regularly followed by the state in question' in the specific circumstances presented." *Id.* (quoting *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006)).

On direct appeal, the Appellate Division unambiguously denied petitioner's insufficient evidence claim as unpreserved pursuant to CPL § 470.05(2).  *Hernandez*, 55 A.D.3d at 849 ("The defendant's contention that the evidence was legally insufficient to support his conviction of murder in the second degree is unpreserved for appellate review [under CPL § 470.05(2)].").  CPL § 470.05(2), "[t]he most common state law procedural ground that arises," requires that an issue be preserved by contemporaneous objection. *Whitlock v. LaValley*, No. 13 CV 5772 (RJD), 2019 WL 3754415, at *3 (E.D.N.Y. Aug. 8, 2019) (citing CPL § 470.05(2)).  CPL § 470.05(2) "has been held to be a firmly established and regularly followed rule for the[] purposes" of procedural default.  *Id.* (citing *Richardson v. Greene*, 497 F. 3d 212, 217-18 (2d Cir. 2007)).  Here, petitioner's claim is procedurally barred because the Appellate Division "clearly and expressly state[d] that its judgment rest[ed] on a state procedural bar." *Aparicio v. Artuz*, 269

F.3d 78, 92 (2d Cir. 2001) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).[5]

      Moreover, although the Appellate Division was under no obligation to decide petitioner's procedurally barred claim on the merits, *see Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding," because "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment."), the court nonetheless finds, as did the Appellate Division, that petitioner's insufficient evidence claim is meritless. *Hernandez*, 55 A.D.3d at 849. In order to prevail in a § 2254 proceeding on a claim of legally insufficient evidence, petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). To evaluate the sufficiency of the evidence, the court "must view the evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, and decide whether the record is "so totally devoid

---

[5]    Although a *habeas* petitioner may overcome a procedural default under state law by (1) establishing cause for his default and actual prejudice resulting from the alleged violation of federal law, or (2) demonstrating that the failure to consider the petitioner's claims would result in a fundamental miscarriage of justice, *see Gutierrez*, 702 F.3d at 111; *Carvajal*, 633 F.3d at 104, petitioner has made no such showing here, and the court detects no cause, prejudice, or injustice arising from his conviction for murder.

of evidentiary support that a due process issue is raised."
*Bossett*, 41 F.3d at 830 (quoting *Mapp v. Warden, N.Y. State
Corr. Inst. for Women*, 531 F.2d 1167, 1173 n.8 (2d Cir.), *cert.
denied*, 429 U.S. 982 (1976)).

Viewing the evidence in the light most favorable to
the prosecution, the record adduced at petitioner's trial was
sufficient to permit a rational juror to find petitioner guilty
of murder beyond a reasonable doubt.  Critically, there is no
dispute that petitioner fired the shots that ended Hill's life.
Two eyewitnesses provided consistent testimony that petitioner
instigated the incident by firing a warning shot, and declared,
"I'm tired of these pussy ass niggas in the neighborhood."
(Trial Tr. 50:12-15.)[6]  Petitioner then fired a warning shot at
Hill, before firing two more shots into Hill's back, killing
him.  In addition to reasonably concluding that petitioner
intended to kill Hill by his actions, the jury could have also
inferred petitioner's murderous intent from his conduct before
and after the shooting.  Amanda Santiago testified that
petitioner told her, before the shooting, that "he was going to
get" Hill.  (*Id.* 85:1-4.)  After petitioner shot Hill, he
boasted "Crip for life," (*id.* 89:14-18), mounted his bike, and

---

[6]    Amanda Santiago testified that, at petitioner's urging, she approached
Hill and called him a "pussy." (Tr. 81:6-9.)  Though Ms. Santiago's account
differs slightly from Mr. Young's, her testimony is essentially consistent
with Mr. Young's recollection that petitioner sought to instigate a
confrontation with Hill.

left the crime scene. (*Id.* 33:19-22.)  The record does not indicate that petitioner expressed remorse for his actions, or concern for Hill's well-being, in the immediate aftermath of the shooting.  At bottom, the evidence against petitioner, including eyewitness testimony from multiple individuals present at the shooting, was appropriately presented and weighed, and it is not the place of this court to question the verdict of a competent jury in a properly conducted proceeding.  Thus, petitioner's claim of insufficient evidence is meritless, as well as procedurally barred.

## II.  Sentencing Error

Petitioner next claims due process violations in relation to the error following sentencing.  (Am. Pet. 5.)  The court agrees with petitioner that the Kings County Criminal Court clerk lacked authority to add a period of five years post-release supervision to petitioner's sentence without a corresponding pronouncement by the trial judge at sentencing.  But this issue is moot.  Petitioner challenged his term of post-release supervision on direct appeal.  The Appellate Division recognized the trial court's error and vacated petitioner's post-release supervision term.  *See People v. Hernandez*, 55 A.D.3d at 850.  Petitioner's case was thereafter remanded for resentencing, and the trial judge corrected the initial error.  (Aff. in Opp. ¶ 10.)  It is unclear what further relief

15

petitioner is requesting, and the court can surmise none that is appropriate.  Because the issue has been fully resolved, the court finds petitioner's claim regarding his post-release supervisory sentence is denied as moot.

## III.   Ineffective Assistance of Trial Counsel

Petitioner asserts a laundry list of deficiencies with his trial counsel's performance, which he claims, both individually and in the aggregate, fell below a Constitutionally acceptable threshold.  The petition's ineffective assistance allegations were each raised in his 440.10 motion (*compare* 440.10 motion *with* Am. Pet.), and comprise both on- and off-the-record actions and omissions.

With respect to claims that may be gleaned from the trial record, petitioner asserts his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel (1) failed to object to Jamell Young's identification of petitioner on the grounds that petitioner and Young were strangers; (2) failed to challenge petitioner's warrantless, out-of-state arrest; (3) erred by comparing petitioner's case to a "Hollywood movie" in closing arguments; (4) gave a generally weak closing argument that "sealed [p]etitioner's guilty verdict;" (5) failed to request a jury instruction charging that Amanda Santiago was petitioner's accomplice; and (6) failed to object to the trial court's adverse ruling on defense counsel's

16

motion for submission of a lesser-included offense.   (Am. Pet.
6-7.)[7]   Petitioner additionally claims his defense counsel erred
in the following ways that are not evident from the trial
record: (7) counsel failed to explain the prosecution's plea
offer to petitioner; (8) counsel did not prepare petitioner to
testify at trial or apprise him of the attendant risks; and (9)
counsel generally failed to prepare for petitioner's trial.
(*Id.* 6.)

### A. Petitioner's Ineffective Assistance Claim is Not Procedurally Barred

Respondent urges the court to dismiss petitioner's
claim of ineffective assistance of trial counsel as procedurally
barred.   (Opp. 10.)   In the 440.10 Decision, Justice Reichbach
held that petitioner failed to raise his on-the-record claims on
direct appeal, and therefore found petitioner's ineffective
assistance claims barred under CPL § 440.10(2)(c).[8]   The Second
Circuit has recognized that a state court's reliance on CPL §

---

[7]      Petitioner categorizes the fifth error as an off-the-record claim, but
it is manifestly evident from the trial transcript that counsel did not seek
an accomplice instruction with respect to Ms. Santiago.

[8]      The text of CPL § 440.10(2)(c) provides that a trial court:

> [M]ust deny a motion to vacate a judgment when, [a]lthough
> sufficient facts appear on the record of the proceedings
> underlying the judgment to have permitted, upon appeal from such
> judgment, adequate review of the ground or issue raised upon the
> motion, no such appellate review or determination occurred owing
> to the defendant's unjustifiable failure to take or perfect an
> appeal during the prescribed period or to his unjustifiable
> failure to raise such ground or issue upon an appeal actually
> perfected by him.

CPL § 440.10(2)(c).

440.10(2)(c) constitutes an adequate and independent state ground that precludes federal *habeas* review. *See, e.g.*, *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995), *cert. denied*, 520 U.S. 1106 (1997). Further, it is well-settled that a motion pursuant to CPL § 440.10 "cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal." *Woods v. Heath*, No. 12-CV-02175 NGG, 2013 WL 6092804, at *9 (E.D.N.Y. Nov. 19, 2013) (quoting *People v. Donovan*, 107 A.D.3d 433 (N.Y. App. Div. 2d Dep't 1985)).

Under New York law, however, where "some of the defendant's allegations of ineffectiveness involve matters appearing on the record, while other involve matters that are outside the record, the defendant has presented a 'mixed claim' of ineffective assistance." *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016) (quoting *People v. Maxwell*, 89 A.D.3d 1108, 1109 (N.Y. App. Div. 2d Dep't 2011) (alteration omitted)). "Where a defendant presents a mixed claim of ineffective assistance . . ., such a mixed claim, presented in a Section 440.10 motion, is not procedurally barred, and the Section 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety." *Id.* (quoting *Maxwell*, 89 A.D.3d at 1109) (alteration in original, brackets and internal quotation marks omitted).

18

Although the 440.10 Decision barred further consideration petitioner's on-the-record ineffective assistance claims, the court finds that CPL § 440.10(2)(c) does not erect a procedural bar to plaintiff's claims, and, *ipso facto*, does not establish grounds for procedural default.  This is because a *habeas* petitioner may successfully challenge a procedural bar, even a "firmly established and regularly followed" one, such as CPL § 440.10(2)(c), where the state court's application of the rule was "exorbitant," "render[ing] the state ground inadequate to stop consideration of a federal question." *Pierotti*, 834 F.3d at 177 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).  Here, petitioner's CPL § 440.10 motion raised a unified ineffective assistance of counsel claim that depended on some facts appearing on the trial record, but also turned on facts appearing outside the record.  Accordingly, petitioner's claim is not procedurally barred, and the court must review it on the merits.  *See Anderson v. Lee*, No. 19-CV-4488 (BMC), 2020 WL 1682605, at *7 (E.D.N.Y. Apr. 7, 2020); *accord Pierotti*, 834 F.3d at 178.

### B. Petitioner's Claim Lacks Merit

#### 1. Legal Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court "clearly established" that the Sixth Amendment to the United States Constitution guarantees effective assistance

19

of counsel.  *Williams*, 529 U.S. at 390-91.  A defendant claiming
ineffective assistance must establish both prongs of the test
*Strickland* prescribes: "deficient performance by counsel and
prejudice."  *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citation
omitted).  Moreover, "[t]he *Strickland* standard is a general
one, so the range of reasonable applications is substantial."
*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

        To satisfy the first prong—deficient performance—a
defendant must show that counsel's representation "fell below an
objective standard of reasonableness."  *Strickland*, 466 U.S. at
688.  A court reviewing an attorney's performance must be
"highly deferential," making "every effort . . . to eliminate
the distorting effects of hindsight" and evaluating "the conduct
from counsel's perspective at the time."  *Id.* at 689.
Consequently, a reviewing court "must indulge a strong
presumption that counsel's conduct falls within the wide range
of reasonable professional assistance[.]"  *Id.; accord Brown v.
Greene*, 577 F.3d 107, 110 (2d Cir. 2009).

        To satisfy the second prong—prejudice—a *habeas*
petitioner must show "a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different. A reasonable probability is a
probability sufficient to undermine confidence in the outcome."
*Strickland*, 466 U.S. at 694.  Merely alleging that errors "had

20

some conceivable effect on the outcome of the proceeding" is insufficient.  *Id.* at 693.  Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).  "In assessing prejudice stemming from the failure to investigate and introduce certain evidence, a court must consider '*all* the relevant evidence that the jury would have had before it,' had the evidence been introduced, including unfavorable evidence."  *Barnes v. Burge*, 372 F. Appx. 196, 199 (2d Cir. 2011) (emphasis in original) (quoting *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (per curiam)).

Because the standards under *Strickland* and AEDPA are highly deferential, "when the two apply in tandem, review is 'doubly'" deferential. *Harrington*, 562 U.S. at 105 (quoting *Knowles*, 556 U.S. at 123). As the Supreme Court reasoned in Harrington:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* Critically, however, the AEDPA's "doubly deferential" framework applies only where a federal constitutional claim has

21

been "adjudicated on the merits" by the state court.  *See* 28
U.S.C. § 2254(d).

   The 440.10 Decision did not adjudicate petitioner's
ineffective assistance of counsel claims on the merits.  Justice
Reichbach addressed the merits solely as a counterfactual
matter, (*see* 440.10 Decision 2 ("*If* the Court were to reach the
merits . . .") (emphasis added)), and only after presumptively
disposing of petitioner's claims as procedurally barred.  The
Second Circuit has stated that where a discussion of the merits
is "preceded by a contrary-to-fact construction," such a
"contingent observation" does not constitute an "adjudication on
the merits."  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007);
*cf. Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting
that "adjudicated on the merits" means "a decision finally
resolving the parties' claims, with *res judicata* effect, that is
based on the substance of the claim advanced, rather than on a
procedural, or other, ground").  Accordingly, the court will
review petitioner's ineffective assistance of counsel assertions
*de novo*, and not under the AEDPA's "doubly deferential"
framework.

   2.  Failure to Explain Plea Offer to Petitioner

   Petitioner claims that he was denied effective
assistance of counsel because his attorney, allegedly, failed to
explain the plea offer to him.  (Am. Pet. 6.)  According to

petitioner, his trial counsel communicated the prosecution's
plea offer by "whisper[ing] in his ear for the very first time
in Court," to ask "if the petitioner wanted to do 18 years flat
in prison." (Reply 8.)  According to petitioner, he declined
the plea offer of 18 years imprisonment because "18 years
sounded like to [*sic*] much time to do in prison." (*Id.*)  The
petition and reply are otherwise devoid of factual
substantiation for this claim, but petitioner's 440.10 motion
provides greater detail:

> Counsel failed to advise, consult or explain to the
> defendant, his right to accept a plea bargain, or, of
> his right to testify at his trial. In front of the
> Court, the defendant was asked by his lawyer, as he
> whispered into the defendant's ear, if he would accept
> 16 or 18 years flat. Without any prior discussion,
> assistance or consultation, the defendant whispered
> back to his lawyer and answered "no." Counsel failed
> to advocate to the defendant what the plea bargaining
> procedure was, and to the advantages and disadvantages
> in accepting or rejecting a plea. All counsel did was
> ask his illiterate client if he wanted to do 18 years
> in prison.

(440.10 Motion 8.)

"The decision whether to plead guilty or contest a
criminal charge is ordinarily the most important single decision
in a criminal case and counsel may and must give the client the
benefit of counsel's professional advice on this crucial
decision." *Carrion v. Smith*, 365 F. App'x 278, 281 (2d Cir.
2010) (quoting *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996),
*cert. denied*, 521 U.S. 1118 (1997)) (internal quotation marks,

brackets, and ellipses omitted).  "In the context of a defense counsel's advice surrounding a plea offer, [a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  *Carrion*, 365 F. App'x at 281 (quotation omitted).  A defendant's "potential sentencing exposure at trial" is a "key consideration for defendant in making an informed decision" because "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."  *Davis v. Greiner*, 428 F.3d 81, 88–89 (2d Cir. 2005) (internal quotation marks omitted).

In addressing *Strickland*'s performance prong, the Second Circuit has admonished that defense counsel "must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."  *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citation omitted).  In order to satisfy *Strickland*'s prejudice prong, a defendant "must demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial."  *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).  "A significant sentencing disparity

between what is provided for under the plea agreement and the sentence imposed after trial, in combination with defendant's statement of his intention that he would have pled guilty[,] is sufficient to support a prejudice finding." *Carrion*, 365 F. App'x at 282 (quoting *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (brackets and internal quotation marks omitted).

Petitioner's claim that trial counsel rendered ineffective assistance by inadequately advising him about the plea offer fails.  Even if the court accepts as true petitioner's allegation that counsel provided no plea offer advice whatsoever, and agrees that there was a significant disparity between the 18-year sentence offered by the prosecution and the 22.5 year to life sentence ultimately imposed, *see Muyet v. United States*, 03 Civ. 4247, 95 Cr. 941, 2009 WL 2568430 at *5 (S.D.N.Y. Aug.19, 2009) ("While a significant sentence disparity between the plea offer and the actual sentence imposed can be indicative of prejudice, such a disparity does not mandate a finding of prejudice in all cases.")(citations omitted), petitioner does not state or imply, either in the petition, reply, or his 440.10 motion, that he would have actually accepted the plea offer.  In order for a *habeas* petitioner to establish prejudice under *Strickland*, the Second Circuit "requires some objective evidence other than defendant's assertions" to corroborate a claim that a plea offer

would have been accepted, but for counsel's errors. *Pham*, 317 F.3d at 182. The petitioner has made no such assertion here and, in fact, his 440.10 motion suggests otherwise. (*See* 440.10 Motion 7 ("This is not the case where the defendant would have accepted the lower offer at the time that the offer was related to him.").)

Further, petitioner maintained at trial that he only shot Hill by accident in response to another individual chasing him with a knife (Trial Tr. 180-82, 204-07), and that it was actually Hill who, without provocation, instigated a fight with petitioner. (*Id.* 174, 193-97.) Petitioner's insistence that he was acting in self-defense belies the notion that he would have actually accepted guilt for murdering Hill. *See Cullen v. United States*, 194 F.3d 401, 407-08 (2d Cir. 1999) ("In assessing [defendant's] credibility, the factfinder would be entitled, but not required, to consider [defendant's] continued protestation of innocence as weighing against the credibility of his claim, and to regard the disparity between the [sentencing] range he faced and the range as represented by defense counsel as another factor bearing upon his credibility. The credibility determination should be based on all relevant circumstances.") (citation omitted); *cf. Mickens v. United States*, No. 97-CV-2122, 2006 WL 2505252 at *4 (E.D.N.Y. Aug.28, 2006) (despite significant sentencing disparity, trial court rejected

petitioner's claim that he would have pled guilty if properly
advised by counsel where, *inter alia*, petitioner was "hardly a
bastion of credibility," had "presented [ ] an elaborate defense
at trial" and had "nothing to lose by making such a claim"
because he had already been convicted), *aff'd*, 257 F. App'x 461,
463 (2d Cir. 2007) ("The district court, having the opportunity
to assess [petitioner's] credibility, disbelieved his testimony
that he would have accepted the plea agreement. We see no reason
to disturb this conclusion."), *cert. denied*, 553 U.S. 1006
(2008).  Accordingly, petitioner's claim regarding his trial
counsel's alleged failure to advise him about the plea offer
fails because petitioner cannot show that, but for counsel's
omission, petitioner would have pled guilty instead of going to
trial.

> 3.  Failure to Prepare Petitioner to Testify and to
>     Warn Him of Attendant Risks

The court lacks a sufficient record to determine
whether counsel's preparation of, and advice to petitioner
regarding his testimony was objectively unreasonable.  In any
event, petitioner fails to establish that counsel's allegedly
deficient performance actually prejudiced him.  In his 440.10
motion, petitioner asserted his "posture and behavior," tendency
to keep his head down, and unspecified "sarcastic remarks," led
the jury to conclude that he was guilty.  (440.10 Motion 11.)

As a preliminary matter, defendant's assertions regarding his physical demeanor during cross-examination, and the juror's reactions thereto, are wholly speculative and, fourteen years after his trial, are nigh impossible to assess, let alone reconstruct.  In addition, the court has reviewed defendant's testimony on cross-examination and finds his responses to the questions posed to him were responsive, appropriate, and did not volunteer more information than was asked for.  More fundamentally, the trial transcript does not indicate that petitioner provided testimony more inculpatory than, or otherwise inconsistent with, his signed, pre-trial statement to the detective investigating Hill's slaying, which was before the jury.[9]  A reasonable reading of the record warrants the conclusion that petitioner was found guilty as a result of the evidence against him, including two eyewitness accounts and his own pre-trial statement, and not as a result of

---

[9]     Defendant's pre-trial statement provided, in pertinent part:

I pulled over my bike and was chillin'. I saw JP, a guy with braids and the guy I popped. JP and the other kid were throwing up Blood signs saying, CK, yo, CK, Crip killas. The kid I popped said, yo, want to get it on. So I got off my bike, walk over to them and I hit the kid I popped like two or three times.

The guy with the braids pulled out a knife from his left side pocket and opened the folding knife and tried to hand it to the kid. So then I snuffed him in the face. I run towards the gate, got to my bike, pulled the gun out and popped him twice. *I think I fired it three or four times in the air after that. The gun was a .25 auto.* I threw it away by Pitkin and 77th Street by the cemetery. I didn't know the kid was dead until the next day.

(Trial Tr. 122-23 (emphasis added).)

his own testimony at trial.  This lack of prejudice is fatal to petitioner's claim under *Strickland*.

### 4. Failure to Investigate, Prepare, and Consult Petitioner

Petitioner also makes a blanket allegation that counsel failed to "prepare, communicate, consult, or visit" the petitioner.  (Am. Pet. 6.)  The petition and reply, however, are wholly devoid of facts substantiating this broad claim.[10]  "[A] claim of ineffective assistance of counsel must contain specific factual contentions regarding how counsel was ineffective." *Peart v. Royce*, No. 9:17-CV-01187-JKS, 2019 WL 3454076, at *9 (N.D.N.Y. July 31, 2019); *see Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review); *see, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong") (citation omitted); *cf. Litwok v. United States*, No. 14-CV-4341 (JFB), 2016 WL 6892814, at *4 (E.D.N.Y. Nov. 23, 2016) (ineffective assistance claim

---

[10]    The 440.10 motion claims that counsel barely spoke to petitioner, and their brief interactions rarely addressed any substantive matters.  (440.10 Mot. 5-6.)  His claim is otherwise duplicative of the assertions pertaining to petitioner's plea offer and testimony.

based on trial counsel's lack of expertise relied on "conclusory allegations . . . insufficient to meet the rigorous standard under *Strickland v. Washington*.")  (quoting *Smalls v. McGinnis*, No. 04 Civ. 0301(AJP), 2004 WL 1774578, at *23 (S.D.N.Y. Aug. 10, 2004)).  Petitioner's generalized "lack of preparation" claim thus fails.

Petitioner also fails to demonstrate that counsel's alleged lack of preparedness would have resulted in a different outcome at trial.  On the contrary, the record strongly supports the conclusion that defense counsel was well-prepared for trial, and provided zealous and competent representation for petitioner throughout the trial proceedings.  For example, trial counsel moved to suppress pretrial identifications of petitioner as unduly suggestive and represented him at the suppression hearing (*see generally* Pre-trial Tr. (5/22/06)), made cogent opening and closing statements, successfully moved the court to charge the jury with a lesser-included offense, presented a defense case (*see* Trial Tr. 221-30, 234), and objected where appropriate. Notably, petitioner does not even conjecture how counsel's performance may have been improved, or what alternative strategy counsel would have pursued, had counsel adequately prepared. For example, petitioner does not state that a witness with material exculpatory information could have been called, but was not.

30

Time and again, courts in the Second Circuit have held that where, as here, a *habeas* petitioner "fails to allege, let alone establish, how the result of his case would have been different had any of his laundry list of shortcomings been corrected, there is no basis for finding that . . . any prejudice resulted from [the attorney's] actions." *Petrucelli v. United States*, 05 Civ. 9582, 02 Cr. 099, 2009 WL 4858081 at *11 (S.D.N.Y. Dec. 15, 2009); *see, e.g.*, *Jones v. Fischer*, No. 05 CV 24, 2006 WL 2583206 at *7 (E.D.N.Y. Sept. 6, 2006) ("Allegations with regard to pre-trial preparation and trial advocacy that 'are vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source . . . do not permit the [c]ourt to conclude that the charged errors reflect performance falling below an objective standard of reasonableness or that but for the errors the result would have been different.'"); *Slevin v. United States*, 1999 WL 549010, at *5 (S.D.N.Y. July 28, 1999), *aff'd*, 234 F.3d 1263 (2d Cir. 2000) ("Petitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different.  Petitioner has not elaborated on how counsel's alleged general lack of preparation prejudiced the outcome of his trial. Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel."); *see also*

*Vasquez v. United States*, 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997)("Petitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source, and, accordingly, the vague and unsubstantiated nature of the claims defeated petitioner's claim of ineffective assistance of counsel.") (brackets, internal quotation marks, and ellipses omitted); *Hartley v. Senkowski*, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)("In light of this demanding [*Strickland*] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight."). Accordingly, petitioner's scattershot attack on trial counsel's preparedness at trial fails.

### 5. Failure to Request Jury Instruction Regarding Santiago's Status as Accomplice

Petitioner claims that counsel erred by not requesting that the trial court instruct the jury that Santiago was defendant's accomplice. Under New York law, an accomplice is "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged." CPL § 60.22(2). If the trial

court concludes, based upon the undisputed evidence, that "the
jury could reasonably reach no other conclusion but that" the
witness is an accomplice within the meaning of CPL § 60.22(2),
then the witness is an accomplice as a matter of law, and the
court must instruct the jury that the witness is an accomplice,
subject to the statutory corroboration requirement under CPL §
60.22(1). *People v. Jones*, 166 A.D.3d 1394, 1395 (N.Y. App.
Div. 3d Dep't 2018), *leave to appeal denied*, 123 N.E.3d 825
(N.Y. 2019) (quoting *People v. Besser*, 749 N.E.2d 727 (N.Y.
2001)). CPL § 60.22(1) bars a conviction based on accomplice
testimony which is "unsupported by corroborative evidence
tending to connect the defendant with the commission" of the
crime charged.

As an initial matter, there is no basis in the record
to support Santiago's purported accomplice status because the
evidence does not indicate she shared petitioner's intent, or
solicited, requested, commanded, or intentionally aided
petitioner to kill Hill. *See* New York Penal Law ("NYPL") §
20.00. "[T]o be an accomplice for corroboration purposes, the
witness must somehow be criminally implicated and potentially
subject to prosecution for the conduct or factual transaction
related to the crimes for which the defendant is on trial."
*People v. Kocsis*, 137 A.D.3d 1476, 1480 (N.Y. App. Div. 3d Dep't
2016) (citation omitted). "The determination of accomplice

33

status depends on whether there is a showing that the witness took part in the preparation or perpetration of the crime with the intent to assist therein, or that the witness counseled, induced or encouraged the crime." *Id.* (citation omitted). Petitioner's vague remark to Santiago that he was going to "get" Hill, and her verbal taunts to Hill on the night of the shooting, do not support the conclusion that she knew of petitioner's intent, much less shared it.

Moreover, even if petitioner were entitled to a jury instruction that Santiago was his accomplice, that instruction would not have helped petitioner.  The resulting charge would have merely instructed the jury that Santiago's testimony could not be credited absent corroboration by other evidence.  *See* CPL § 60.22(1); *accord* CJI2d[NY] Accomplice, as a Matter of Law.[11] At trial, Santiago's testimony was amply corroborated by petitioner's admission that he fired the shots that killed Hill, and the testimony of Jamell Young.  Thus, the absence of an accomplice charge was not prejudicial because, even if Santiago

---

[11]     A hypothetical accomplice instruction to the jury would have read substantially as follows:

> Our law provides that a defendant may not be convicted of any crime upon the testimony of an accomplice unless it is supported by corroborative evidence tending to connect the defendant with the commission of that crime.  In other words, even if you find the testimony of Ms. Santiago to be believable, you may not convict the defendant solely upon that testimony unless you also find that it was corroborated by other evidence tending to connect the defendant with the commission of the crime.

were deemed petitioner's accomplice, her testimony still could have been credited by the jury.

In sum, trial counsel did not act in an objectively unreasonable manner by not requesting an accomplice jury charge, and in any event, an accomplice instruction almost certainly would not have altered the outcome of petitioner's trial.

### 6. Failure to Object to Adverse Ruling on Motion for Submission of Lesser-Included Offense

Petitioner's next claim is easily dispensed with. Petitioner claims that he was denied effective assistance of counsel because counsel failed to object to the trial court's adverse ruling on his motion for the submission of second-degree manslaughter as a lesser-included offense of the murder charge.  (*See* Trial Tr. 221-30, 234.)[12]  A party need not take an exception to a court's ruling on its specific motion to preserve a claim for appeal.  CPL § 470.05(2); *accord id.*, Practice Commentaries (McKinney) ("Modern New York procedure no longer requires an express 'exception' to a ruling in order to raise a point of law on appeal.  This applies to mid-trial rulings as well as to requests to charge or objections to the charge."); *see People v. Rosen*, 81 N.Y.2d 237, 245 (N.Y. 1993) ("We also reject the argument that defendant's claim is unpreserved. The People fault defendant for 'dropping the subject without further

---

[12]    The trial court decided to instruct on Manslaughter in the First Degree as a lesser-included charge.  (*Id.* 234.)

discussion' after the court announced its ruling denying
defendant's request to attend sidebars. However, defendant's
specific application and the court's equally specific ruling
were sufficient to preserve the issue for appeal.") (alteration
omitted).  Here, the issue of whether the court should have
charged the jury with the lesser-included offense of second-
degree manslaughter was already preserved for appeal.  Trial
counsel had no need to object, and did not render ineffective
assistance by failing to do.

### 7.   Failure to Object to Young's Identification of Petitioner at Trial

Petitioner claims his trial counsel was ineffective
for failing to challenge Jamell Young's trial identification of
petitioner on the basis that petitioner and Young were
strangers.  The Second Circuit has observed that "[c]enturies of
experience in the administration of criminal justice have shown
that convictions based solely on testimony that identifies a
defendant previously unknown to the witness is highly suspect
[and] the least reliable, especially where unsupported by
corroborating evidence." *Jackson v. Fogg*, 589 F.2d 108, 112 (2d
Cir. 1978).  The Supreme Court has likewise cautioned that,
"even when uncontradicted . . . identification of strangers is
proverbially untrustworthy." *United States v. Wade*, 288 U.S.
218 (1967).  The trial and pre-trial record do not warrant these

concerns.  At the pre-trial suppression hearing, the prosecution
asked petitioner whether he knew Jamell Young; petitioner's
trial counsel answered in the affirmative.  (Pre-trial Tr.
(5/22/06) 37 ("[Petitioner] knows the [victim's] brother, but he
doesn't know him by that name. He knows that the deceased has a
brother.")  In addition, the detective assigned to investigate
the shooting testified that Young stated he knew petitioner for
"at least three months," and saw him "on almost a daily basis,"
prior to the shooting.  (*Id.* 23.)  Counsel therefore had a
reasonable basis to conclude petitioner and Young were not
strangers, and following the suppression hearing, had no
apparent reason to press the matter any further.  Petitioner's
claim thus fails to satisfy the first *Strickland* prong.

> 8.  Failure to Challenge Petitioner's Warrantless
>     Arrest Outside of New York State

Petitioner also claims that counsel was ineffective
for failing to challenge the legality of petitioner's
warrantless arrest outside of the state.  There appears to be no
legal basis for petitioner's grievance, however.  New York
Criminal Procedure Law authorizes officers to make warrantless
arrests when the officer has "reasonable cause" to believe the
arrestee has committed a crime, "whether in [the officer's]
presence or otherwise."  CPL § 140.10(1).  The officer's
authority to arrest is not confined to his or her "geographical

area of employment." *See id.* § 140.10(3); *see also id.* § 1.20(34-a) (defining "geographic area of employment").  As relevant here, an officer may "pursue" the offender outside New York State and effect an arrest of that person in any state that subscribes to the principles of the "uniform close pursuit act." *Id.* § 140.10(3).  The statutory text of CPL § 140.10(3) does not mandate that the out-of-state arrest be close in time to the commission of the underlying crime.

On June 7, 2005, petitioner was arrested on felony charges outside his home—at a pizza shop in Pennsylvania[13] (*see* Pre-trial Tr. (5/22/06) 16)—and thus no warrant was necessary to arrest him, even though he was outside New York State at the time of arrest.  *See* NYPL § 140.10(3).  Counsel's decision not advance a baseless objection did not run afoul of petitioner's Sixth Amendment right to effective counsel.

### 9. Reference to Case as Resembling a "Hollywood movie"

Petitioner claims that counsel was ineffective for referring to his case as one that could be seen in movies.  (Am. Pet. 7.)  Indeed, petitioner's trial counsel compared the prosecutor's opening statement to a movie trailer, in which the trailer is often far better than the movie, suggesting the

---

[13]   Pennsylvania's equivalent to New York Uniform Close Pursuit Act is codified at 42 Pa. Stat. and Cons. Stat. Ann. § 8953.

People's opening statement overhyped the quality of its actual
trial evidence.  (*See* Trial Tr. 6:14-7:3.)[14]  Petitioner's
conclusory critique is a paradigmatic example of an attack on
counsel's strategic choices, rather than conduct based on
ineffective assistance.  Counsel, in his professional judgment,
determined that he could effectively deploy a framework, rooted
in widely-understood cultural terms, to remind the jury of its
duty to render a verdict based solely on the evidence presented
at trial, rather than being unduly swayed by the rhetorical
force of the prosecution's opening and closing remarks.
Counsel's use of an easily comprehensible analogy, designed to
guide the jury in its task of weighing only the trial evidence,
is a "virtually unchallengable" strategic choice, *Strickland*,
466 U.S. at 690, and cannot sustain a claim for ineffective
assistance of counsel.  *See, e.g.*, *United States v. Luciano*, 158
F.3d 655, 660 (2d Cir. 1998) (deference to counsel's decisions
is particularly warranted when considering matters of trial
strategy, which reviewing courts are "ill-suited to second-

---

[14]    Counsel stated the following:

I suggest to you this is reminiscent, say, to a movie trailer.  The
previews, say, that you see in the movies. And I will remind you if you
have ever gone to movies and watched the trailers, then subsequently
see the movies, sometimes the trailer looks like you are going to see a
comedy and when you see the movie it turns out to be a tragedy.
Sometimes the trailer indicates that you are going to see an action
picture, instead it turns out to be a love story. What I would request
of each and everyone is to pay attention to the evidence. Keep  your
eye on the ball. Don't let any lawyer, including me, tell you what you
should think and see.

guess"); *Mason v. Scully*, 16 F.3d 38, 42 (2d Cir. 1994)
("Actions or omissions by counsel that might be considered sound
trial strategy do not constitute ineffective assistance.")
(internal quotation marks omitted); *accord United States v.
Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (reasonably made
strategic calls do not support ineffective assistance claim).
Petitioner's challenge to counsel's statement fails.

### 10. Counsel Gave a Weak Summation

Lastly, petitioner claims that counsel was ineffective
for giving, in defendant's view, a weak summation.  (Am. Pet.
7.)  As an initial matter, petitioner's claim is wholly
conclusory and bereft of factual support.  Even so, the court
finds, based on a review of trial counsel's closing statement,
that the defense's summation was well within the range of
reasonable attorney conduct, and effectively sought to minimize
the evidence against petitioner, while accentuating evidence
favorable to petitioner.  Although petitioner's counsel was
unsuccessful, insofar as petitioner was convicted, petitioner
has not provided the court with any basis to find that the trial
outcome was a result of anything other than the evidence against
petitioner, rather than the quality of defense counsel's closing
remarks.

The court therefore rejects petitioner's assertions of ineffective assistance of trial counsel, both individually and in the aggregate.

## IV.  Ineffective Assistance of Appellate Counsel

Finally, petitioner argues that appellate counsel failed to raise two meritorious claims: "i) The court erred in not charging the jury with the lesser included offense of Manslaughter in the Second Degree; and ii) Trial counsel provided ineffective assistance of counsel to the Petitioner." (Am. Pet 9.)  "Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel." *Etoria v. Bennett*, 292 F. Supp. 2d 456, 466 (E.D.N.Y. 2003) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)).  Appellate counsel are not obliged to advance every nonfrivolous argument that could be made, *see Jones v. Barnes*, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The court will address petitioner's claims of ineffective assistance of appellate counsel in reverse order. First, as discussed above, the court finds petitioner's trial

41

counsel rendered effective assistance under *Strickland*, and accordingly, the decision of petitioner's appellate counsel not to pursue a meritless ineffective assistance claim on appeal was well within "the wide range of professionally competent assistance."  *Id.*

As for petitioner's claim that his appellate counsel erred by not challenging the trial court's refusal to charge the jury with the lesser-included offense of Manslaughter in the Second Degree, the court finds no merit.  At trial, petitioner's counsel moved the court to charge the jury with Manslaughter in the First Degree and Manslaughter in the Second Degree as lesser-included offenses of Murder in the Second Degree.  (Trial Tr. 221-30.)  After reserving decision, Justice Reichbach partially granted the motion, and charged the jury with the lesser-included offense of Manslaughter in the First Degree, but not Manslaughter in the Second Degree.  (*Id.* 234:6-13 ("[B]ased on the record here I see no basis to give the request for Manslaughter in the Second Degree.  However, since this was a shooting at some distance I am, I think -- totally possible that a jury might conclude that it wasn't an intent to kill but rather [to] cause serious physical injury. I'm going to give

Manslaughter in the First Degree as a lesser included of Murder
in the Second Degree.").)[15]

Even if, *arguendo*, the trial court erred by holding
that no "reasonable view of the evidence . . . would support a
finding that [petitioner] committed the lesser offense but not
the greater," *Repanti*, 28 N.E.3d at 513 n.1 (citation omitted),
the court's error was harmless.  The New York Court of Appeals,
and its lower courts, have declined to vacate convictions, even
though the trial court may have "erred in denying defendant's
request to submit the crime[] of manslaughter in the second
degree . . . to the jury as [a] lesser included offense[] of the
charged crimes of murder in the second degree and manslaughter
in the first degree . . . ."  *People v. McIntosh*, 128 N.E.3d
173, 173–74 (N.Y. 2019); *see, e.g.*, *People v. Johnson*, 662
N.E.2d 1066, 1067 (N.Y. 1996) ("Having found defendant guilty of
reckless murder the jury did not reach the offense of
manslaughter in the first degree, and thus we need not decide
whether the court erred in failing to submit the more remote
offense of manslaughter in the second degree.") (citation

---

[15]    "To establish that a count is a lesser included offense . . . a
defendant must establish 'that it is theoretically impossible to commit the
greater crime without at the same time committing the lesser.'"  *People v.
Repanti*, 28 N.E.3d 511, 513 (N.Y. 2015) (quoting *People v. Glover*, 439 N.E.2d
376 (N.Y. 1982)); *see also* CPL § 1.20(37).  This determination requires the
court to compare the statutes in question, without reference to the case's
factual particularities.  *Repanti*, 28 N.E.3d at 513.  "Thus, the defendant
must show that the offense 'is an offense of lesser grade or degree and that
in all circumstances, not only in those presented in the particular case, it
is impossible to commit the greater crime without concomitantly, by the same
conduct, committing the lesser offense.'"  *Id.* (citation omitted).

omitted); *People v. Wilder*, 132 A.D.2d 683 (N.Y. App. Div. 2d Dep't 1987) ("Any error in the trial court's refusal to charge manslaughter in the second degree as a lesser included offense of murder in the second degree was harmless, since the jury was given the lesser included offense of manslaughter in the first degree and nonetheless convicted the defendant of the top count.") (citations omitted); *People v. Quintana*, 135 A.D.2d 752, 753 (N.Y. App. Div. 2d Dep't 1987) ("In any event, any error in failing to charge manslaughter in the second degree was harmless as the jury rejected the intoxication defense and additionally rejected the lesser included charge of manslaughter in the first degree and convicted the defendant of the higher crime of murder in the second degree.") (citation omitted).

If the trial court did err by refusing to charge the jury with Manslaughter in the Second Degree, appellate counsel may have reasonably concluded that the error was harmless, and that the Appellate Division would not find justification to vacate petitioner's conviction because "the jury's guilty verdict on the indictment's highest count[,] despite the availability of the next lesser included offense for their consideration, foreclose[d] [petitioner's] challenge to the court's refusal to charge the remote lesser included offenses." *McIntosh*, 128 N.E.3d at 174 (citations, brackets, and internal quotation marks omitted).  The "process of 'winnowing out weaker

arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527 (1986) (quoting *Jones*, 463 U.S. at 751-752).  Had appellate counsel challenged petitioner's conviction on the grounds he now proposes, the Appellate Division almost certainly would have determined that petitioner's conviction on the indictment's highest count of Murder in the Second Degree, despite being charged with the Manslaughter in the First Degree, "dispel[led] any speculation as to whether the jury might have reached a guilty verdict" on an even lower degree of homicide, *i.e.* Manslaughter in the Second Degree.  *Id.* (citation omitted). Thus, appellate counsel's decision not to pursue a futile argument on appeal was objectively reasonable, and did not violate petitioner's right to effective counsel.  Petitioner's claim of ineffective assistance of appellate counsel thus fails, and is denied.

## CONCLUSION

Based on the foregoing, the petition for a writ of *habeas corpus* is DENIED in its entirety.  Petitioner's claim of insufficient evidence is procedurally barred and meritless. Although the trial court erred at sentencing, the error was properly addressed on appeal and subsequently rectified by the trial court, and is therefore denied as moot.  Petitioner fails

to state a plausible claim for ineffective assistance of counsel with respect to either his trial or appellate counsel. Thus, the petition for a writ of *habeas corpus* is DENIED and this case is DISMISSED. A certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

The clerk is respectfully directed to enter judgment in favor of respondent, close this case, and send a copy of this Memorandum and Order and the judgment to the petitioner at his last known address and note service on the docket.

**SO ORDERED.**

Dated:    May 28, 2020
          Brooklyn, New York

                                        /s/
                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge